J-S36036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.G., MINOR CHILD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.G., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 401 MDA 2019 |

Appeal from the Order Entered February 19, 2019
In the Court of Common Pleas of Northumberland County Orphans' Court
at No(s):  Adoptee 43 of 2018

| | | |
|---|---|---|
| IN RE: Z.G., MINOR CHILD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.G., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 402 MDA 2019 |

Appeal from the Decree Entered February 28, 2019
In the Court of Common Pleas of Northumberland County Orphans' Court
at No(s):  Adoptee 44 of 2018

BEFORE:  PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:      **FILED: AUGUST 19, 2019**

The Appellant, M.G. (Father), seeks review of the February 19, 2019 order and February 28, 2019 decree entered in the Court of Common Pleas of Northumberland County Orphans' Court (orphans' court), granting the petitions of Northumberland County Children and Youth Services (CYS) and

_____
*   Retired Senior Judge assigned to the Superior Court.

involuntarily terminating Father's parental rights to his minor sons, M.G. (born April 2014) and Z.G. (born May 2015) (Children).[1]  We affirm.

## I.

An evidentiary hearing on the petitions for involuntary termination of Father's parental rights was held on December 3, 2018, and December 28, 2018.[2]  At the hearing, the orphans' court heard the testimony of Father; Kim Carpenter (a CYS caseworker); Z.P. (Children's foster parent); Kathryn Hollenbach (a CYS casework supervisor); R.G. (Children's paternal grandfather); and J.C. (Children's paternal grandmother).

M.G. was born on April 29, 2014 and Z.G. was born on May 24, 2015. Both children were placed by CYS into Shelter Care on May 5, 2016.  Father was incarcerated for nine months prior to the Children's placement.  The orphans' court summarized its findings and the procedural history of this matter as follows.

> The two little boys in question have been in [f]oster [c]are for 31 months or[,] stated in other terms, over two and a half years!  Thus, both boys have spent more than half of their lives in [f]oster [c]are.  This is totally unacceptable.  Minor children

_____

[1] Children's mother, A.L.R., voluntarily relinquished her parental rights to Children.  She has not participated in this appeal.

[2] At the termination hearing, Children were represented by legal interest counsel and a guardian *ad litem*.  ***See In re Adoption of L.B.M.***, 161 A.3d 172, 174-75, 180 (Pa. 2017) (pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests).

deserve a life of stability, nurturing and care. We are in no way disparaging what the foster parents have done. Foster parents rarely get the recognition they deserve. But the primary purpose of foster care is to provide a short term period of placement until the natural parents can "get their act together". Two and a half years should have provided more than enough time.

[Father] was provided over 129 occasions to visit with his sons. He took advantage of 19[,] some of which were during court hearings. Thus, he missed 110 occasions to meet with his children. This amply demonstrates where his priorities lie. He also cannot use his three incarcerations as an excuse as the three incarcerations total 18 days.

The agency has attempted to provide multiple services for all the parties. [Father] did participate in two of the services provided. However, the primary issue with [Father] and the natural mother are their refusals to follow the recommendations of the mental health professionals. [Father] had a [p]sychiatric evaluation and refuses to comply with the recommendations.

He has been inconsistent with his housing. He currently resides in a bedroom at his own father's residence. [Father] is in fact a transient, living in New York when convenient and living in Pennsylvania when convenient. As far as this [c]ourt is concerned, he has no permanent place of abode. The New York State children's authorities disapproved the interstate compact relative to [Father]. On the occasions when the boys do meet with their [f]ather they "act out" upon their return to the foster home.

These young boys have languished in foster care long enough. They deserve stability, love and support. They are still young enough not to suffer adverse consequences of systematic placements. [Father] has been given more than enough time and offered resources to straighten his life out and become a parent.

His failings are more than evident. Turning to the best interest of these little boys, this too, is more than evident. They deserve the opportunity for a full and fulfilling life with parents who will nurture and support them.

Orphans' Court Opinion, 2/19/19, at unnumbered 2-3.

The orphans' court issued an order on February 19, 2019, granting CYS's petitions.[3]  Father timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court, acting *sua sponte*, consolidated the appeals.  Father's brief presents a single issue that CYS did not present evidence of the effect severing the bond between Father and Children would have on the minor children. Father's Brief, at 7.  Father asserts there was a bond between Father and Children and that they like to see him.  ***Id.*** at 9.  Farther argues that no evidence was presented detailing the effect that terminating this bond would have on Children.  ***Id.***  As further discussed below, we hold that the orphans' court did not abuse its discretion in terminating Father's parental rights.

## II.

## A.

We review Father's claims in accordance with the following standard of review.

---

[3] The order, which is dated January 28, 2019, includes the docket numbers relating to each child.  However, the order was only filed at the docket for M.G.  Subsequently, on February 28, 2019, the court entered separate decrees terminating Father's rights involuntarily.  With regard to M.G., the decree was redundant, as the court had already granted CYS's petition.  As to Z.G., Father filed his notice of appeal on February 27, 2019, before the court entered the decree terminating his parental rights.  Nonetheless, Father's appeal is properly before us because, "[o]ur rules provide that if appeal is prematurely filed. . ., the appeal is perfected when a final, appealable order is subsequently entered." ***In re N.W.***, 6 A.3d 1020, 1021 n. 1 (Pa. Super. 2010).

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

. . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

While the orphans' court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), as well as (b), Father only

- 5 -

challenges the orphans' court's conclusions with respect to Section 2511(b),[4]

which provides as follows:

**§ 2511. Grounds for involuntary termination**

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

* * *

23 Pa.C.S. § 2511(b).

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical and emotional needs and welfare.  *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).  "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."  *Id.*  "[A] parent's basic

---

[4] Father waived any challenge to 23 Pa.C.S. § 2511(a) and the subsections thereof by failing to challenge that section in his brief.  *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. *In re Z.P.*, *supra* at 1121. The orphans' court may consider intangibles such as the love, comfort, security and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011); *see also In re T.D.*, 949 A.2d 910, 920–23 (Pa. Super. 2008), *appeal denied*, 601 Pa. 684, 970 A.2d 1148 (2009) (affirming the termination of parental rights where "obvious emotional ties exist between T.D. and Parents, but Parents are either unwilling or unable to satisfy the irreducible minimum requirements of parenthood," and where preserving the parents' rights would prevent T.D. from being adopted and attaining permanency). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

### B.

Here, the record reflects that the best interests of Children were served by terminating Father's parental rights. Children have been in foster care for more than half of their lives. N.T., 12/3/18, at 23-24. Children's foster

parents care for Children and they are doing well and are bonded to their foster parents. N.T., 12/28/18, at 40. Children's foster parents also care for Children's three siblings and are a permanency option for Children. *Id.* at 42. Children's guardian *ad litem* met with Children and reported Children like where they live and want to be adopted. *Id.* at 151.

During Children's time in care, Father missed 110 out of 129 offered visits, and Children acted out following the few visits Father attended. N.T., 12/3/18, at 9. While Father regularly called Children, they were angry and defiant following the calls. N.T., 12/28/18, at 41-42.

The orphans' court appropriately considered Children's need for safety and stability and determined that termination of Father's parental rights best met Children's needs and welfare. After careful review, the record supports the orphans' court's decision, and we do not discern an error of law or abuse of discretion. Accordingly, we affirm the order and decree involuntarily terminating Father's parental rights.

Order affirmed; Decree affirmed.

President Judge Panella joins the memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2019